HAMITER, Justice
(concurring).
The source of our present primary election law, LSA-R.S. 18:281 et seq., is Act 46 of 1940.
The first paragraph of Section 20 of that statute directed the State Central Committee to meet in appropriate years and issue a call for a first primary election to nominate a candidate for governor and candidates for the lesser state offices running at the same time (referred to hereafter as “state officers”), the election to be held on the third Tuesday of January.
With reference to a second primary election for the nomination of a governor and the other “state officers”, Section 77 mandatorily provided: “In case no candidates for the office of Governor should have receivéd a majority of the votes cast for that office, then a second primary election shall be held for Governor and for all other State officers the candidates for which shall have failed to receive a majority of the votes cast for the office for which they were respectively candidates and the second primary shall be held at the same places as the first primary was held, five weeks from the date of the first primary; provided, that if this day should fall on Mardi Gras, then the second primary shall be held six weeks from the date of the first primary. * * * ” (Italics mine.)
And Section 79 recited: “If for any reason, there is no second primary to nominate a candidate for Governor, there shall be no second primary election for State Officers who ran in the first primary, but the person receiving a plurality of the votes cast for the office for which he was a candidate shall be declared to be the nominee of the party holding said primary.” (Italics mine.)
Under the specific provisions of the last quoted section the State Central Committee was expressly prohibited from calling a second primary election for “state officers” if for any reason there resulted from the first primary a nominee for governor (for example, if a candidate for the latter office received a majority of the votes cast or one of the two “top” candidates therefor withdrew) .
Section 79 was repealed by Act 60 of 1944, while the other mentioned sections *577 were carried into the Revised Statutes (without any material changes) and are now in full force and effect.
The repeal of Section 79 occasioned merely the removal of its prohibitory provisions from the primary election law. Undeniably, the repeal, in view of the language of such section, did not have and could not have had the effect of requiring the holding of a second primary for “state officers”.
As a consequence of the repeal of Section 79 the only provisions remaining in the law that relate to the holding of a second primary for the nomination of “state officers” are those contained in Section 77 (above quoted, and now LSA-R.S. 18:356. But such provisions, unlike those of Section 20 which are unqualified in directing the holding of a first primary for the nomination of “state officers”, require a second primary "If no candidate for the office of governor should have received a majority of the votes cast for that office”.
Accordingly, the statute is silent as to any specific procedure to be followed in the election of nominees for “state officers” when, as in these cases, a candidate for the office of governor receives a majority vote in the first primary.
However, provision has been made by the lawmakers for such an eventuality. Section 7 of the 1940 statute, which is now LSA-R.S. 18:287, states: “In the event it is necessary by law to elect or select a party nominee for any of the recognized political parties, and this Act does not make provision therefor, then the State Central Committee, as herein created, shall be and is hereby fully authorized to provide for the election or selection of such nominee.” Thus, in a situation such as that with which we are presently confronted the State Central Committee is vested with wide discretion in making the selection of party nominees, the law not having specifically set forth the procedure for choosing them.
Therefore, with respect to the matter under consideration, the Democratic State Central Committee had complete authority either to call a second primary election or to declare (as it did in these cases) that each of the candidates for “state officers” who received a plurality of the votes in the first primary would be a party nominee.
For the success of these actions relators rely entirely on that portion of Section 80 of the statute (now LSA-R.S. 18:358) which recites that if the Committee finds that “any candidate has failed to receive a majority of the votes cast * * * a second primary shall be held * * *.” But the section further states that such “second primary shall be held with the same election officers and at the same places as the second primary for State Officers * * * ; if there be no second primary for State Officers * * * then the second primary shall be held five weeks from the date of the first primary * * This last quoted language, particularly in view of Sections 77 and 79 which specifically dealt with the matter of second primaries for “state officers”, *579 makes it clear that the Legislature intended the provisions of Section 80 to apply to the nomination of officials other than governor and “state officers”.
I concur in the decrees.